José Ibáñez Rivera, Petitioner, v. Guy J. Swope, Governor of Puerto Rico, Respondent.

No. 349.   Argued February 4, 1941.—Decided February 7, 1941.

*Celestino Iriarte, F. Fernández Cuyar* and *H. González Blanes,* for the petitioner.   *George A. Malcolm, Attorney General, R. García Cintrón* and *Pablo Defendini, Assistants Attorney General,* for the respondent.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

The Insular Board of Elections certified to the Governor that in the last general elections held in Puerto Rico on the 5th of November of 1940, the petitioner was elected member of the House of Representatives for the fifth representative district, and the Governor, complying with the law, issued to him the corresponding certificate of election. Later, on the 28th of last December, the petitioner addressed a letter to the Governor in which he tendered his resignation of that office to take effect at once, but the Governor refused to accept said resignation, alleging that he could not accept the same until the petitioner had sworn and taken possession of his office before the House of Representatives of Puerto Rico, alleging furthermore that said resignation should then be sent to the Speaker of the House so that the latter in turn could send it to him.

The petitioner, on the 28th of last month, requested the Supreme Court to issue a writ of mandamus to the Governor, and taking into consideration that the Legislative Assembly of Puerto Rico, by mandate of the Organic Act, will not begin its sessions until the second Monday of the current month, that is, the 10th instant, we issued the alternative writ of mandamus and set the hearing of the case for the 4th of the current month, at 2:00 P. M., on which day the parties appeared, and after the Governor originally brought to court, the Hon. José M. Gallardo, had been substituted by the actual incumbent, the Hon. Guy J. Swope, the respondent filed his answer, in which after accepting the facts alleged in the petition, he brought forward as special defenses that this Court lacks jurisdiction to issue the writ requested and that the petition does not allege sufficient facts to constitute a cause of action.

The two special defenses are based on the contention of the respondent to the effect that a member of the Legislature cannot resign his office as long as he has not taken the oath and occupied the same, and that when he has done

this, the resignation should be presented through the Speaker of the House to which he should have been elected. He invokes Section 32 of the Organic Act, which reads thus:

"Section 32.—That the senate and house of representatives, respectively, shall be the sole judges of the elections, returns, and qualifications of their members, and they shall have and exercise all the powers with respect to the conduct of their proceedings that usually pertain to parliamentary legislative bodies. Both houses shall convene at the capital on the second Monday in February following the next election, *and organize by the election of a speaker or a presiding officer, a clerk, and a sergeant at arms for each house, and such other officers and assistants as may be required."* (Italics supplied.)

The provision of the Organic Act contained in Section 32 which provides that the Senate and the House of Representatives respectively shall be the sole judges of the *elections, returns and qualifications of their members,* has been taken from subdivision 5, Section 1 of the Constitution of the United States, and this in turn was taken from the practice followed in England. 1. Blackstone's Comm. 163, 178, 179. It was necessary to trust some official or board with this important faculty and as Judge Story says in his work *"Commentaries on the Constitution of the United States",* volume 1, page 604, if this faculty were granted to some organism other than the legislative body itself, the independence, purity and even the very existence and ways of procedure of said body could be destroyed or placed in imminent danger. But this privilege by its own terms and because of the reasons which inspire it, is limited to those questions which may affect the determination of the validity of the elections, returns or qualifications of its members. Thus, we see for example, that the Court of Appeals of New York, construing this clause, has expressed itself in the following terms:

"It is true that Congress is the final judge of the qualifications of its own members, and that Congress has now convened. But it remains our duty to require the public officers of the state to comply with the state's laws. . . . No certificate of election has yet been

24

issued to either candidate; no return has been transmitted by the secretary of the state to the House of Representatives; *and neither candidate has yet been accepted or sworn in as a member. The certificate of election will establish a prima facie right, and should register the true result.* If it had already been issued, *and the representative sworn in as a member,* there would arise a different situation, involving different questions, on which we do not attempt to pass. But *until the certificate has been transmitted and acted upon, if not thereafter, the courts of the state are open to the candidate who complains that the certificate is about to issue in violation of the law." People ex rel. Brown* v. *Suffolk County* (1915) 216 N. Y. 732. (Italics supplied.)

The same principle was applied *a contrario sensus* in *Burchell* v. *State Board of Election Commrs.,* (1934) 252 Ky. 823, 68 S.W. (2d) 427. In said case the State Board of Election Commissioners had issued a certificate of election to a candidate for Congress and certified the result of the elections to the Clerk of the House of Representatives, and the candidate had taken the oath of office and begun to fulfil the duties of the same. Another candidate for the same office applied to the courts for a writ of peremptory injunction directed to the Board of Election Commissioners ordering it to issue a certificate of election in his favor. The court decided that it lacked jurisdiction over such a case, since the action filed was essentially an election contest and the faculty to decide questions which may arise concerning the elections and qualifications of its members, lies exclusively in the Congress. See the annotation in 107 A.L.R. 205, cited by the respondent, in which several cases are analyzed, among them the last two cited.

Is the letter or the spirit of said Constitutional provision broken or infringed in any way by the fact that an elected representative who has not yet accepted or taken the oath of office, tenders his resignation to the Governor and the latter accepts it, when the legislative assembly duly chosen in the last elections held in November of last year has not yet convened or organized?

In our opinion, no question of an election contest, returns or qualifications of the member who is resigning is involved in this case. Neither can the decision in this case affect in any manner the independence, the purity, or the existence and ways of action of the House of Representatives. A certificate of election having been issued to the petitioner, his election is *prima facie* valid until the House of Representatives decides the contrary, in case he wished to take possession of his office (*Brown* v. *Suffolk County, supra*), and nothing prevents him from waiving his right to report himself before the House of Representatives to take possession of the office to which he was elected. The Organic Act itself, in its Section 30, acknowledges his right to resign and upon the Governor falls the duty of appointing his successor. To this effect, the above cited Section provides:

"Section 30.—(*As amended by an Act of Congress approved June 1, 1938.*)—The terms of office of senators and representatives elected at any general election shall be four years, *commencing on the 2d day of January following the date upon which such election was held.* In case of a vacancy in the office of any senator or representative occurring by reason of death, *resignation,* or otherwise, the Governor, upon the recommendation of the central committee of the political party of which such senator or representative was a member, shall appoint a senator or representative from such political party to fill such vacancy who shall hold office for the remainder of the term for which his predecessor was elected." (Italics supplied.)

The respondent argues that the right to resign only exists after taking the oath of office and assuming the duties of his position, but the statute does not distinguish between a resignation presented before and another presented after taking possession of the office, in the same way that it does not distinguish between a vacancy caused by the death of a member which took place before or after taking possession, and where the law does not distinguish the courts should not either. The action of the Governor in accepting petitioner's resignation does not prevent the House from making the cor-

responding investigation and deciding in accordance with justice, when his substitute should try to take possession of his office, since the right to the office of the member appointed by the Governor would be derived from that of the one who resigned, and if the election of the latter did not give him the right to take possession of his office because it was null and void, neither would it give that right to the substitute appointed by the Governor.

To claim, as the respondent does, that the petitioner must assume the duties of and take the oath of office in order that he may then be able to resign, is a manifest absurdity. The law does not require futile things and futile indeed would it be to compel the petitioner to accept an office in order that he may immediately resign it. Why not resign before accepting? Furthermore, when he assumes the duties of his office, he must take an oath by which he swears that he accepts and will fulfill loyally the duties of his office, and that the oath is taken without mental reservations and without the intention of evading it. Is it not equivalent to compelling the petitioner to take a false oath when he already has stated his firm intention of not accepting the office and therefore of not fulfilling the duties of the office to which he was. elected?

Respondent invokes in his favor Section 207 of the Political Code which in its relevant part says as follows:

"Sec. 207. Resignations from office must be in writing and made as follows:

"2. By members of the House of Delegates, whether the Legislative Assembly is in session or not, to the presiding officer of the House of Delegates, who must immediately transmit the same to the Governor."

Assuming for the purposes of the argument that Section 207 of the Political Code is still in effect—since by its own terms one can see that it is obsolete, as it tries to regulate a situation which has changed from the time that the Organic Act was passed, creating as it did two legislative chambers

elected by popular vote instead of the House of Delegates elected by The People and the Executive Council appointed by the president—even thus, assuming, we repeat, that said Section is still in effect, the same contemplates a situation which does not exist at this moment, that is, that there be a Speaker of the House to whom to send the resignation. In the case at bar, there is still no Speaker to whom to send said resignation, since although the term of the elected representatives began the second of last January, the legislative assembly will not convene or organize until the 10th of the instant month, and on that date each House will elect its presiding officer. In our opinion, Section 208 of the Political Code is applicable, said Section reading as follows:

"Art. 208. An office becomes vacant on the happening of any of the following events before the expiration of the term: . . . 3.— His resignation duly accepted: *Provided,* That if any person who has been duly elected to a public office *does not wish to qualify and take possession of his office, he may present his resignation to the Governor before his term of office begins, and the acceptance of such resignation will operate to create a vacancy in such office on the first day of the term for which such person was elected."* (Italics supplied.)

The respondent maintains that there is no ministerial duty on the part of the Governor to accept the resignation and therefore the writ of mandamus should not be issued.

As we have shown, petitioner has a right to resign his office by tendering his resignation to the Governor, as there is no presiding officer of the House to which he was elected, and that right of the petitioner creates the reciprocal duty on the part of the Governor to accept his resignation without any condition. This being so, it is a ministerial duty of the Governor to accept petitioner's resignation and the Governor having refused to do so, the writ of mandamus requested should be issued to compel him to fulfill his duty.

For these reasons, the petition must be granted and a peremptory writ of mandamus issued in this case.